UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANGIE J.,                          )
                                   )
            Plaintiff              )
                                   )
v.                                 )    No. 2:17-cv-00148-JHR
                                   )
NANCY A. BERRYHILL,                )
*Acting Commissioner of Social Security,*  )
                                   )
            Defendant              )

## MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found that the plaintiff did not have a severe impairment. The plaintiff seeks remand on the basis that the ALJ failed to provide good reasons for discounting her treating physician's medical opinions. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 4-10. I find no error and, accordingly, affirm the commissioner's decision. I need not and do not address the plaintiff's separate challenge to the ALJ's alternative Step 5 finding. *See id*. at 10-15.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 23.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2018, Finding 1, Record at 19; that she had the medically determinable impairments of obesity (status post gastric bypass), degenerative joint disease of the knees, degenerative joint disease of the right shoulder, iron deficiency, a history of sarcoidosis, a history of alcohol abuse, depressive disorder, and anxiety disorder, Finding 3, *id.* at 20; that those impairments, considered singly and in combination, did not, or were not expected to, significantly limit her ability to perform basic work-related activities for 12 consecutive months, as a result of which she had no severe impairment or combination of impairments, Finding 4, *id.*; and that she, therefore, had not been disabled from November 27, 2013, her alleged onset date of disability, through the date of the decision, January 29, 2016, Finding 6, *id*. at 25. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out

groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28 ("SSR 85-28")).

## I. Discussion

### A. Background

The ALJ explained that he had considered the degree to which the plaintiff's alleged symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinion evidence, in deeming the plaintiff's impairments nonsevere. Record at 20. He deemed her "alleged limitations in sitting, standing, walking, lifting, carrying, attention, concentration, focusing, memory, need to lie down, dizziness, need for frequent absences and inability to leave the home . . . not substantiated by competent medical evidence to the degree alleged." *Id.* at 22.

He observed that, although imaging studies had "revealed degenerative joint disease in the bilateral knees and right shoulder[,]" there was "no evidence of persistent limited range of motion, muscle spasms, atrophy, or neurological deficits[,]" and the plaintiff had received "minimal, if any, treatment[,]" not requiring "injections, physical therapy, chiropractic manipulation, or a surgical consult." *Id*. He added:

> With regard to [the plaintiff's] mental impairments, mental status examinations . . . have been within normal limits. While the [plaintiff] did engage in a partial hospitalization program in August 2014, she attended only five of the recommended twelve to fifteen sessions and was discharged due to noncompliance. The alleged frequency, severity, and duration of [her] mood disorder, anxiety

3

disorder and panic attacks are not supported by the weight of the medical evidence to the degree alleged.

*Id*. at 23 (citations omitted).

The ALJ noted that the plaintiff's treating physician, Elisabeth DelPrete, D.O., had submitted both physical and mental medical source statements, which he summarized as follows:

> In a [Physical] Medical Source Statement dated May 16, 2014, [Dr. DelPrete] maintained that the [plaintiff] could occasionally and frequently lift and carry less than 10 pounds, never climb stairs, ramps, ladders, ropes, or scaffolds, never kneel, crouch, crawl or stoop and occasionally balance, but [did] not [assess] limitations in sitting, standing, walking, [or] pushing/pulling.
>
> In a [Mental] Medical Source Statement dated May 16, 2014, [Dr. DelPrete] maintained that the [plaintiff] would have seriously limiting but not precluded abilities in setting realistic goals or making plans independently, interacting appropriately with the general public, and maintaining socially appropriate behavior, but would be unable to maintain appropriate relationships with co-workers and supervisors. Dr. DelPrete opined that on average, the [plaintiff] would be absent from work[] more than four days per month due to her impairments or treatment. Interestingly, Dr. DelPrete opined that the [plaintiff]'s substance abuse does contribute to her limitations as set forth above. Those statements were apparently withheld from state agency physicians and were not submitted until June 2015. The state agency physicians saw Dr. DelPrete's actual records through August 2014. Her subsequent records do not show any worsening thereafter.

*Id*. at 24 (citations omitted).

The ALJ stated that he gave the DelPrete opinions "minimal weight" because they were "inconsistent with her treatment notes and the overall record." *Id*. He elaborated:

> For example[,] her January 30, 2013-August 2014 notes do not document muscle spasm, muscle atrophy, limitation of motion, any neurological deficits, respiratory abnormalities, or contain any mental status examination and describe[] her as being in no acute distress. She does not indicate that the [plaintiff] was hearing voices during any examination. The [plaintiff]'s depression was described as being stable in 2014. . . . X-rays showed only some degenerative change in the right clavicle. Further, Dr. DelPrete's opinion is speculative with regard to the [plaintiff] being absent from work more than four days in light of the minimal findings on examination; there is simply no basis on which to support such a restrictive finding.

*Id*. at 24-25 (citations omitted).

The ALJ gave "substantial evidentiary weight" to the opinions of agency nonexamining physicians Benjamin Weinberg, M.D., and Rafael Olivares, M.D., and nonexamining psychologists Brenda Sawyer, Ph.D., and Brian Stahl, Ph.D., that the plaintiff had no severe physical or mental impairment. *Id*. at 24. He deemed those opinions "well supported by the evidence of record and based on their particular and detailed knowledge of the standard of disability as set forth by the [c]ommissioner[,]" concluding that "[e]vidence submitted after the date of their opinions does not warrant a change to their findings or to the weight given their opinions." *Id*. (citations omitted). That later-submitted evidence included July 27, 2015, x-rays of the plaintiff's right clavicle and October 21, 2015, x-rays of both knees. *See id.* at 445-46. The ALJ explained, "[a]s detailed previously, the [plaintiff] has failed to exhibit significant findings on clinical examinations[,]" and there were "no records to substantiate [her] allegations of symptoms severity." *Id*. at 24.

### B. Failure To Continue Past Step 2 on Record Presented

As a threshold matter, the plaintiff argues that the ALJ erred in deeming her impairments nonsevere given the existence of Dr. DelPrete's opinions that she was limited to lifting less than 10 pounds, could not perform most postural activities, including stooping, could not maintain socially appropriate relationships in the workplace, and would likely miss more than four days of work per month. *See* Statement of Errors at 4-6, 9-10. Although the plaintiff does not specify which impairment(s) should have been found severe, she argues that the limitations assessed by Dr. DelPrete, standing alone, required that the sequential evaluation process proceed. *See id.* at 10 ("Here, admittedly, the evidence is inconclusive. However, where a question of severity exists, the sequential evaluation process must continue."). In so arguing, she suggests that a treating physician's opinion must be handled differently at Step 2 than at later steps. *See id*. at 9 ("[E]ven

5

if the ALJ might have reasonably found at a later stage of the sequential evaluation process that Dr. [DelPrete]'s treating source opinion did not merit controlling weight regarding the issue of total disability, the ALJ erred in concluding, at Step 2, that [the plaintiff's] physical and mental impairments were not severe despite Dr. [DelPrete]'s findings to the contrary.").

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 8-9, this court recently rejected a similar argument, observing:

> [T]he existence of inconclusive or conflicting evidence at Step 2 does not require a finding that a claimant has a severe impairment or impairments. It is the ALJ's job to resolve evidentiary conflicts. . . . To the extent the evidence is 'inconclusive,' it is the plaintiff's burden at Step 2 to demonstrate that her impairments are severe.

*Day v. Berryhill*, No. 1:16-cv-00593-JAW, 2017 WL 5037454, at *3 (D. Me. Nov. 2, 2017) (rec. dec., *aff'd* Nov. 20, 2017) (citations omitted).

The same result obtains here. The mere existence of medical opinion evidence suggesting that the plaintiff had severe impairments did not obligate the ALJ to continue the sequential evaluation process.

### C. ALJ's Handling of DelPrete Opinions

The plaintiff also contends, in the main, that remand is warranted by the ALJ's asserted failure to articulate good reasons for giving little weight to the DelPrete opinions. *See* Statement of Errors at 6-10; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (An ALJ is required to "give good reasons . . . for the weight [he or she] give[s] [a] treating source's medical opinion."). As the commissioner points out, however, the ALJ did provide good reasons; namely, that Dr. DelPrete's opinions were inconsistent with her own treatment notes and the overall record and speculative to the extent that Dr. DelPrete opined that the plaintiff would likely be absent from work more than four days per month. *See* Opposition at 4; Record at 24-25. Therefore, I find no error.

6

### 1. Inconsistencies with Dr. DelPrete's Own Treatment Notes

The identification of inconsistencies between a treating physician's medical opinion and his or her own treatment notes "[is] a good, and in itself sufficient, reason to reject [the treating physician's] opinion[.]" *Fothergill v. Colvin*, No. 2:15-cv-143-JHR, 2016 WL 183643, at *3 (D. Me. Jan. 13, 2016).

Regarding her mental impairments, the plaintiff argues that the ALJ failed to give appropriate weight to Dr. DelPrete's opinion that, due to her auditory hallucinations with severe depression, she was unable to maintain appropriate relationships with supervisors and coworkers and would likely miss more than four days of work per month. *See* Statement of Errors at 5; Record at 379, 382-83. Nonetheless, the ALJ reasonably deemed the DelPrete treatment notes inconsistent with those assessed limitations.

First, "in light of the minimal findings on examination[,]" the ALJ supportably described Dr. DelPrete's opinion that the plaintiff's impairments would likely require her absence from work for more than four days per month as "speculative" and unsupported. Record at 24-25.

Second, the ALJ identified reasonable bases for failing to credit Dr. DelPrete's opinion that the plaintiff's auditory hallucinations with severe depression prevented her from being able to maintain appropriate relationships with supervisors and coworkers: that Dr. DelPrete's treatment notes were devoid of mental status examinations, described the plaintiff as being in no acute distress, did not indicate that she was hearing voices during any examination, and described her depression as "stable" in 2014. Record at 24.[2]

The plaintiff contends that the fact that Dr. DelPrete did not indicate that she observed auditory hallucinations "misses the point" because Dr. DelPrete indicated in her medical source

---

[2] The commissioner concedes that Dr. DelPrete did note that the plaintiff was hearing voices during a May 2013 examination, but points out that this predated her alleged onset date of disability. *See* Opposition at 6.

statement that the plaintiff's hallucinations were significant, and the plaintiff repeatedly told treating and examining sources that she experienced them. Statement of Errors at 7. Yet, this does not undermine the ALJ's finding that, to the extent that Dr. DelPrete relied on auditory hallucinations as a source of the plaintiff's limitations, those limitations are not supported by her own observations recorded in treatment notes during the relevant period.

The plaintiff further argues that "stable does not mean that [an impairment] results in no functional limitations." *Id*. at 6. However, the ALJ reasonably deemed "stable" in this context to mean precisely that, observing that Dr. DelPrete's treatment notes contained no mental status examinations and that she described the plaintiff as being in no acute distress. *See* Record at 24.[3]

With respect to the plaintiff's physical impairments, her counsel contended at oral argument that the ALJ erred in rejecting Dr. DelPrete's limitation to lifting no more than 10 pounds on the bases that (i) Dr. DelPrete had not noted persistent limited range of motion, muscle spasms, atrophy, or neurological deficits, (ii) the plaintiff had received minimal, if any, treatment, and, (iii) in January 2013, the plaintiff had told Dr. DelPrete that she had been limited to lifting no more than 20 pounds. *See id*. at 22, 324.[4]

He asserted that the ALJ had impermissibly substituted his layperson's judgment for that of a physician in deeming the objective findings and level of treatment inadequate to support the

---

[3] The plaintiff further contends that the ALJ mischaracterized Dr. DelPrete as having found that the plaintiff's substance abuse contributed to her limitations, when Dr. DelPrete made clear that the only effect was on her suicidal ideation. *See* Statement of Errors at 6; Record at 24, 382-83. As the commissioner rejoins, *see* Opposition at 6, any error is immaterial, the ALJ having articulated reasons other than the plaintiff's substance abuse for discounting the mental limitations assessed, *see* Record at 24-25.

[4] At oral argument, counsel for the commissioner asserted that the plaintiff had waived any argument for remand based on the ALJ's handling of her physical impairments by failing to explain, in her statement of errors, how any particular physical impairment should have been found severe. Construing this as an objection based on this court's rule that "issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court[,]" *Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) (footnote omitted), I overrule it. While the plaintiff did not elaborate on how her physical impairments should have been found severe, she did raise the issue. *See* Statement of Errors at 6 (arguing that ALJ's rationale in rejecting the DelPrete opinions was seriously flawed and, accordingly, his finding that her "physical and mental impairments [we]re not severe was error").

8

lifting limitation, relying on a 20-pound lifting limitation assessed in December 2012, after the plaintiff fell at work, *see id*. at 324, and underestimating the significance of the plaintiff's testimony that she had been told not to lift more than five pounds in the wake of her gastric bypass surgery, apparently to avoid abdominal wall complications, *see id*. at 38.

As counsel for the commissioner rejoined, the ALJ made a reasonable layperson's judgment that normal objective findings on examination and minimal treatment undermined the severe lifting limitation assessed. In any event, as counsel for the commissioner noted, the ALJ did not substitute his layperson's judgment for that of experts. He relied on the opinions of Drs. Weinberg and Olivares. *See id.* at 24. In turn, Dr. Weinberg had the benefit of review of Dr. DelPrete's progress notes through March 2014, and Dr. Olivares had the benefit of review of her notes through August 2014. *See id.* at 87-89, 109-10. Yet, neither found any severe physical impairment. *See id*. at 82-83, 113. Beyond this, the ALJ concluded that evidence unseen by Drs. Weinberg and Olivares did "not show any worsening thereafter." *Id*. at 24.

At oral argument, the plaintiff's counsel took issue with the latter point, asserting that July 2015 x-rays postdating the Weinberg and Olivares opinions revealed the development of arthritis in a different right shoulder joint, the acromioclavicular ("AC") joint, undermining the ALJ's reliance on the Weinberg and Olivares opinions and buttressing Dr. DelPrete's lifting limitation. *See id*. at 445. However, as the plaintiff's counsel acknowledged at oral argument, it is unclear whether Dr. DelPrete assessed the lifting limitation on the basis of the plaintiff's shoulder, gastric bypass surgery, or both. *See id*. at 375-76 (listing no medical/clinical finding(s) supporting lifting limitation). In any event, the x-rays in question merely reveal "[s]table, mild osteoarthrosis of the right [AC] joint" with an "otherwise unremarkable examination[.]" *Id*. at 445. Without more, they

neither call into question the Weinberg and Olivares opinions nor buttress the lifting limitation of Dr. DelPrete.[5]

## 2. Inconsistencies with the Overall Record

"[I]nconsistency with other substantial evidence of record" is an additional "well-recognized bas[i]s for affording a treating source's medical opinion little or no weight." *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018).

The plaintiff argues that the ALJ mischaracterized evidence from agency examining consultant Patricia Kolosowski, Ph.D., and social worker Susannah Hamden, L.C.S.W, as a result of which he wrongly deemed that evidence inconsistent with Dr. DelPrete's assessed mental limitations. *See* Statement of Errors at 7-8. I find no error.

The plaintiff contends that the ALJ ignored Dr. Kolosowksi's report that she hears voices all of the time telling her to do negative things and incorrectly stated that Dr. Kolosowski found no limitations. *See id.* at 7; Record at 21 (finding by ALJ that "Dr. Kolosowski did not describe any work related limitations or indicate that the [plaintiff] was unable to perform sustained full time competitive employments or work [or] require impairment related unscheduled work breaks or frequent absences").

---

[5] At oral argument, the plaintiff's counsel further contended that Drs. Weinberg's and Olivares' opinions cannot stand as substantial evidence that his client's bilateral knee impairment was nonsevere because neither had the benefit of review of subsequent October 2015 x-rays of her bilateral knees. *See* Record at 446. He added that the knee x-ray evidence supported the plaintiff's testimony at hearing that she could not stand for long and that her knees gave out. *See id*. at 38. This point, which constitutes an independent argument for remand that was not raised in the plaintiff's statement of errors, *see* Statement of Errors at 4-15, is waived, *see Farrin*, 2006 WL 549376, at *5. In any event, even if the point were not waived, it would be unavailing. The x-rays in question revealed "mild-to-moderate spurring and narrowing of the medial compartment consistent with degenerative change" and "mild spurring of the lateral compartment and of the articular surface of the patella suggestive of degenerative changes" in the right knee, and "[a] small joint effusion[,]" "mild-to-moderate narrowing and spurring of the medial and lateral compartments[,]" and "[s]ome mild spurring of the articular surface of the patella" in the left knee. Record at 446. As the ALJ noted, *see id*. at 24, Dr. DelPrete did not assess any limitations in standing or walking, *see id*. at 375. The plaintiff's counsel identified no evidence, besides his client's testimony at hearing, that her degenerative knee condition caused the claimed limitations. The x-ray evidence, standing alone, did not compel the ALJ to accept that testimony.

10

However, as the commissioner rejoins, *see* Opposition at 6, the ALJ acknowledged that the plaintiff had told both Drs. DelPrete and Kolosowski that she had been hearing voices for a long time, *see* Record at 21. Nothing about the Kolosowski report called into question the ALJ's finding that Dr. DelPrete did not observe that the plaintiff was hearing voices during the relevant period. *See id*. at 24.

As the commissioner further argues, *see* Opposition at 7, the ALJ reasonably deemed Dr. Kolosowski to have assessed no limitations in view of the vague language she employed in describing potential limitations and the fact that both Drs. Sawyer and Stahl considered her report in deeming the plaintiff's mental impairments nonsevere, *see* Record at 81 (Sawyer opinion), 101 (Stahl opinion), 387 (statements by Dr. Kolosowski that plaintiff's "concentration and persistence might depend upon what was asked of her[,]" "[s]he presents as dealing with some continuing issues[,]" and "[h]er adap[ta]tion to work might depend upon additionally how she is physically feeling[,]" which "would be better evaluated by a physician").

The plaintiff finally contends that the ALJ erred in ignoring social worker Hamden's assessment of a Global Assessment of Functioning, or "GAF," score of 42. *See* Statement of Errors at 8; Record at 395.[6] As the commissioner argues, *see* Opposition at 8, any error in failing

---

[6] The plaintiff mistakenly refers to the GAF score as 45. *See* Statement of Errors at 8. Nothing turns on the error, which I have corrected. A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine

to acknowledge the assessed GAF score is harmless given that both the ALJ and Dr. Stahl considered the Hamden evaluation containing the GAF score at issue, *see* Record at 21, 99, 393-96. Indeed, as the ALJ noted, on mental status examination, Hamden found that the plaintiff "was alert and oriented in four spheres, mood depressed, speech within normal limits, thought form clear, thought content relevant, concentration fair, memory intact, insight and judgment good, and no hallucinations." *Id*. at 21, 393-94.

In sum, the ALJ addressed and provided good reasons for his handling of the DelPrete opinions. No more was required.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 27th day of September, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

practice."). Nonetheless, I assess the supportability of the ALJ's decision based on the evidence available to him at that time.